IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| Amy Torres, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ Act. No. __CV 625-083__ |
| | ) | |
| Cpl. Jonathan Simpson, in his individual | ) | Complaint |
| capacity under color of law, | ) | Jury Demanded |
| | ) | Damages |
| Shane Burke, Chief, Sylvania Police | ) | |
| Department, individually and as a | ) | |
| supervisor and as the final | ) | |
| policymaker of police | ) | |
| department officer and supervisor | ) | |
| hiring, training, discipline | ) | |
| and retention, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| All jointly and severally. | ) | |
| | ) | |

**COMPLAINT**

<u>Nature of the Action</u>

1.      This civil action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth

Amendment to the United States Constitution, by Defendant Corporal Jonathan Simpson of the

Sylvania Police Department, for unreasonable seizure/false arrest, excessive force, then

malicious prosecution flowing from the false arrest to cover for his false arrest and excessive

force, arising from Simpson's arrest and use of force against Plaintiff Amy Torres on November

2, 2023, where the cover and retaliatory charges of obstruction and public disturbance were

dismissed December 6, 2023.

2.      Plaintiff brings a supervisory-liability claim against Chief Shane Burke, in his individual

capacity, for his actions and inactions in the hiring, training, supervision, and discipline of

1

Defendant Simpson (and of the supervisors over Simpson), where Burke knew or, through reckless disregard and in breach of his duty as Chief, should have known from Simpson's record of misconduct prior to November 2, 2023, that Simpson posed a substantial risk of harm to the public, yet the Chief failed to implement or enforce reasonable policies, training, supervision, or corrective discipline to eliminate that risk.

3. As a direct, foreseeable, and proximate result of Burke's deliberate or reckless indifference, and the causal connection between Burke's deficient hiring, retention, failure to train, supervise, or discipline, and his ratification of inadequate practices, caused Simpson to act as a frontline officer, which caused Simpson to be able to unreasonably seize Plaintiff based on false pretextual probable cause and use unlawful force injuring Plaintiff Amy Torres on November 2, 2024; and maliciously prosecute her until the December 6, 2023 dismissal, causing deprivation of Torres' constitutional rights and related injuries, sought to be remedied by this action.

4. The action seeks damages and any applicable injunctive relief against the City of Sylvania, a "person" under 42 U.S.C. § 1983, because the Defendant Chief Burke, in his official capacity as the Chief of the Sylvania Police Department,  may fairly be deemed to be the final policy maker in the arena of police officer and supervisor hiring, training, supervision for corrective discipline, and termination.

5. As of November 2, 2023, Officer Simpson should not have been a police officer, should not have been in a role that involved interaction with the public in which Simpson could issue commands to, or use force on, citizens, or Chief Burke, or the supervisors who are supervised by Burke who supervised Simpson, should have disciplined, trained and assigned Simpson on November 2, 2023, so he would not have caused the deprivation of Plaintiff's federal rights and

2

caused her damages, that are actionable under 42 U.S.C. § 1983, with the right to compensatory damages, costs, and reasonable attorney's fees under 42 U.S.C. § 1988.

6. Plaintiff seeks compensatory damages, costs, and reasonable attorney's fees against all defendants under 42 U.S.C. § 1988; and punitive damages against Burke and Simpson in their individual capacities for the willful, wanton or reckless disregard of the rights of all that were deprived as to Torres.

Jurisdiction and Venue

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

8. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because the events or omissions giving rise to these claims occurred in Screven County, Georgia, which lies within the Statesboro Division of the Southern District of Georgia.

Parties

9. Plaintiff Amy Torres is a small woman, weighing approximately 120 pounds, a person and citizen of the United States residing in Georgia.

10. Defendant Corporal Jonathan Simpson ("Simpson") was at all relevant times a law-enforcement officer employed by the Sylvania Police Department ("SPD"), who is sued in his individual capacity for actions and refusals to act under color of, though not necessarily within the law, for depriving Plaintiff of federal and state rights that , rising to the level of protected liberty interests, causing her injury, for which she seeks remediation under law.

11. Defendant Chief Shane Burke ("Chief Burke") was at all relevant times the Chief of Police for the Sylvania Police Department, ("SPD") who is sued individually in his supervisory

capacity and as the final policymaker for hiring, training, supervision, discipline, and decisions about officers, supervisors.

12.    Defendants are sued jointly and severally.

Factual Allegations

A. Simpson's Red Flag Prior Employment and Discipline, Show a Substantial Risk of Abuse of Power and Losing Control of Judgment.

13.    Upon information and belief, prior to his hire by SPD in February 2021, Simpson had multiple separations and discipline with other agencies:

(a) Savannah State University Department of Public Safety (12/2/2013–7/31/2014) — terminated July 31, 2014, during probation for insubordination and performance deficiencies, including refusing to answer radio calls, lying about receiving a transmission, and failing to correct rejected reports in the MDS system;

(b) Tybee Island Police Department (4/22/2014–8/5/2014) — agency personnel file flagged his separation as a termination/dismissal though POST recorded a voluntary resignation;

(c) Rincon Police Department (8/2014–3/2016) and Centerville Police Department (3/2016–7/2018) — application materials noted '11 red flags,' including two tied to a 'Yes' answer to whether he had ever purchased, supplied, or sold illegal drugs (not sustained misconduct findings, but personnel-file notations);

(d) Effingham County Sheriff's Office (7/23/2018–6/17/2020) — terminated June 17, 2020 for violations of policies on professional image, on- and off-duty conduct, and conduct unbecoming, following review of a series of Facebook posts described as racially motivated; appeal denied and termination upheld; and

(e) Georgia POST (4/23/2021) — public reprimand and 24-month probation with required remedial training; a recommendation for revocation was noted but not imposed. Upon information and belief, Chief Burke had actual or constructive knowledge of the above history, and of Simpson's temperament and propensity to escalate encounters when confronted with perceived non-compliance, before hiring and retaining him. Nonetheless, Chief Burke hired Simpson in February 2021 while Simpson remained on POST probation through April 24, 2023.

B. November 2, 2023, Encounter with Out-of-Control Simpson, in Sylvania, Georgia

14.   On November 2, 2023, Ms. Torres went to the residence of her adopted minor son's natural mother, Ms. Pye, in Sylvania, Georgia, to speak with her minor son, who is referenced herein with the fictitious name of a Boy. ,

15.   A disagreement existed concerning visitation and discipline between Ms. Torres and Ms. Pye, who lived with Mr. Bragg and his four children.

16.   Ms. Pye and Mr. Bragg regarded Ms. Torres as unwelcome at the residence.

17.   Ms. Bragg called SPD, and Defendant Simpson and Officer Rigdon responded.

18.   After arriving, Officer Rigdon calmly engaged Ms. Torres on the sidewalk leading to the front porch, a public-private area.

19.   There were no "No Trespassing" nor similar signs .

20.   Simpson walked to the side of the house to speak with Mr. Pye about alleged trespass while telling Ms. Torres he would speak to them, Mr. Bragg and Ms. Pye, first, implying he would also talk to Ms. Torres.

21.   Mr. Bragg spoke generally about prior incidents and that he had twice reported matters to authorities, but when asked by Simpson, who knew there had to be a Trespass warning, Mr.

Bragg and Ms. Pye offered no affirmative evidence of an existing Trespass warning in response to Simpson asking them questions.

22.    He also asked Mr. Bragg and Ms. Pye about the issue with Boy and they acknowledged that Boy was Torres' adopted son but they said they had paperwork that he could be at their house.

23.    Mr. Bragg and Ms. Pye did not provide written trespass notice when asked.

24.    At that point, regarding using any force against Ms. Torress, Simpson had no reasonable suspicion and no probable cause to either detain  with force or arrest, while Ms. Torres was on the sidewalk and peacefully engaged in conversation with Officer Rigdon.

25.     Without even attempting to inform Ms. Torres that she was not authorized to be on the property, and without giving a meaningful warning that she must leave the property forthwith upon pain of arrest for criminal trespassing, Simpson briskly closed distance toward Ms. Torres.

26.    Rather than issue a clear, lawful trespass warning and afford her an opportunity to depart, form about 25 feet away, Simpson issued aggressive commands to 'go stand by the car' and, within seconds, initiated physical contact by grabbing Ms. Torres's arm to control her, where physical control is only lawful for an investigative detention based on reasonable suspicion or probable cause for arrest.

27.    Simpson escalated the encounter with profane, retaliatory, and threatening commands, to Torres's objection to Simpson's aggression ending the calm discussion with Officer Rigdon, including: 'Hey, listen, we're not gonna play this shit. Listen to what we're telling you to do. You're gonna go to jail. Go over there and stand in front of the car. I don't care. Go stand in front of the car. I'm not gonna tell you again … Then get the f*** over there … You're going to jail.'

28.    Video contemporaneously captured these statements.

29.     Ms. Torres's body posture remained non-assaultive and her hands visible as she peacefully conversed with Officer Rigdon.

30.     Simpson then seized Ms. Torres, forcefully took her to the ground, and asserted, 'You just hit me, on body cam,' although the video shows no such strike, but it does show Simpson controlling Torres arm as he crowded her as part of his efforts to get her to the car without a trespass warning, and his control of her arm was used to create pretext that Torres hit him.

31.     When Simpson was ordering Torres off the public-private area of the lot, Simpson had not issued a Trespass warning, and Ms. Torres had not refused to go, and at one point before the physical force started by Simpson, Torres and taken two or three steps in the direction of the street.

32.     After Simpson took her to the ground, and she was face-down, he pulled Ms. Torres's left arm high behind her back while pressing down on her shoulder with his right hand, and then pulled her right arm behind her to apply handcuffs., even though there was no reasonable suspicion or probable cause for anything, but only because "she would not listen."

33.      As a direct and proximate result, Ms. Torres sustained serious injuries to both shoulders requiring physical therapy, then surgical intervention and postoperative therapy.

34.     She was unable to work for a prolonged period and lost substantial income that will be proven with greater specificity at trial.

35.     The precise medical expenses will be shown with greater specificity at trial.

36.     Simpson charged Ms. Torres with obstruction of a law-enforcement officer and public disturbance.

37.     Those charges were dismissed by Nolle Prosequi on December 6, 2023.

38.    Following an internal-affairs review, Chief Burke issued Simpson a written reprimand and required that Simpson attend de-escalation and ethics/professionalism courses within six months; and the City management extended Simpson's probationary period for promotion to corporal.

Claims for Relief

*Count I* — Unlawful Seizure / False Arrest and Malicious Prosecution (42 U.S.C. § 1983 — Fourth Amendment) against Defendant Simpson

39.    Plaintiff realleges the foregoing paragraphs 14-38 as if fully set forth herein.

40.    On November 2, 2023, Defendant Simpson seized and arrested Plaintiff without probable cause and without a lawful basis.

41.    Simpson manufactured and falsified probable cause for the arrest, using unlawful touching and the brute force of his 250 pounds to intentionally make it appear that Torres struck him, so he could capture in on a body camera, to create the cover and malicious charges of obstruction of an officer and public disturbance

42.    Simpson cuffed Plaintiff and took her to jail where she stayed  for three hours.

43.    Torres had to hire lawyer, to whom she paid $2500.

44.    The charges were dismissed about December 6, 2023.

45.    Any alleged criminal trespass theory was unsupported because, inter alia, Ms. Torres was never given a clear, meaningful trespass warning and an opportunity to depart before arrest.

46.    The charges of public disturbance and obstruction of an officer, which were dismissed on December 6, 2023, was premised on Simpson's own unlawful escalation and unlawful seizing of Ms. Torres in a control hold, used to control a person as to whom facts exist showing reasonable suspicion or probable cause, which did not exist.

47.    Simpson pretextually pulled Ms. Torres' arm at him and falsely claimed she struck or hit him, and announced, but falsely proclaimed the assault he got on body camera.

48.    As cover for his preceding violation of Torres' rights, Officer Simpson, in the ensuing abuse of his power under color of, though not within the law, lodged and pursued the charges of obstruction and pubic disturbance, notwithstanding the absence of lawful probable cause, and he lied on incident reports to cover the false charges; itself a violation of the law, using the control of Plaintiff's small boy and his bod camera  as a cover for his unlawful acts.

49.    At the scene, Simpson announced he had Torres on body camera hitting him, but it was Simpson who was crowding Torres and pulling Torres' arm to make it appear she had her arm near him, to create the pretext for obstruction and public disturbance charges.

50.     Simpson's conduct violated clearly established Fourth Amendment rights.

51.    Simpson's conduct was in retaliation for Torres' First Amendment right to challenge abusive governmental authority.

52.    Torres' self-defense was an assertion of the inviolate right of self-defense in Georgia, which mirrors the right of a person to equal protection of the laws and the right to maintain bodily integrity against arbitrary abuses of governmental power, which is a state-created federal liberty interests, and Simpson retaliated for Torres' assertion of the inviolate right of self-defense and protection of bodily integrity.

53.    Simpson's prior record, and upon information and belief his record while with Sylvania before this incident, would have shown any reasonable supervisor who had carried out reasonably required inquiry as to Simpson's suitability to become or remain a road officer interacting with the public, that Simpson posed a substantial risk of harm to the public, when exposed to the foreseeable circumstances that put Simpson in a position to abuse his authority

when interacting with members of the public who were in conflict or there was a possible violation of law, or a citizen might rightfully exercise First Amendment rights and challenge Simpson's unreasonable or abusive actions.

54.    As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, physical injury, medical expenses, wages and other damages.

55.    Plaintiff is entitled to compensatory damages and punitive damages against Simpson, plus attorney's fees and costs under 42 U.S.C. § 1988.

*Count II* — Excessive Force (42 U.S.C. § 1983 — Fourth Amendment)
against Defendant Simpson

56.    Plaintiff realleges the foregoing paragraphs 23-32 as if fully set forth herein.

57.    Ms. Torres posed no immediate threat, was not violent, and was engaged in a peaceful conversation with Officer Rigdon when Simpson escalated.

58.    One hundred twenty-pound Ms. Torres was thrown to the ground by 250-pound Simpson because she was exercising her First Ament right to object to officer misconduct.

59.    The resulting bilateral shoulder injuries and surgeries demonstrate the severity of force

60.    Simpson's conduct violated clearly established Fourth Amendment rights.

61.     As a direct and proximate result, Plaintiff suffered physical pain, permanent or lasting injury, emotional distress, medical expenses, lost wages, and other damages.

Plaintiff is entitled to compensatory and punitive damages, plus attorney's fees and costs under 42 U.S.C. § 1988.

*Count III* — Supervisory Liability (42 U.S.C. § 1983) against
Defendant Chief Burke (Individual Capacity)

62.     Plaintiff realleges the foregoing paragraphs 13 (a-e) and as if fully set forth herein, which supports a conclusion that an objectively reasonable supervisor who conducted inquiry that was reasonable under the circumstances should know that Simpson had a prior record of lying about official duties, insubordinate disrespect of authority, and lack of control, which shows that as a law enforcement officer Simpson posed a substantial risk of falsifying probable cause or evidence.

63.     Upon information and belief, discovery is reasonably likely to reveal that while Simpson was with the Sylvania Police Department, from his hire in 2021 to November 2, 2024, Simpson's actions and inactions would have shown the objectively reasonable supervisor that as a law enforcement officer, Simpson posed a substantial risk of harm to the public.

64.     Burke and his supervisors failed to implement or enforce reasonable policies, for inquiry, hiring, training, supervision, or corrective discipline to eliminate that risk, which caused Simpson to cause the deprivation of Plaintiff's rights and injuries on November 2, 2023, and malicious prosecution thereafter, including but not limited to, lying about his actions and otherwise falsifying records, including to manufacture evidence and falsify probable cause, when Simpson's own misconduct violated rights prior to the falsified probable cause

65.     Despite actual or constructive knowledge of Simpson's prior terminations, reprimands, POST probation, and temperament/anger tendencies when confronted with perceived non-compliance, Chief Burke hired and retained Simpson and failed to implement adequate training, supervision, and discipline to prevent foreseeable constitutional violations.

66.     Chief Burke's acts and omissions — including deliberately indifferent hiring, retention, failure to train on lawful trespass warnings and de-escalation, and failure to supervise and

11

discipline — were causally connected to Plaintiff's injuries and were the moving force behind the unlawful seizure and excessive force used on November 2, 2023.

67.     In the alternative, after the incident, Chief Burke ratified Simpson's misconduct by imposing insufficient discipline in the face of a clear constitutional violation captured on video, thereby reinforcing the practices that caused Plaintiff's injuries.

68.     As a direct, foreseeable, and proximate result of Burke's deliberate (reckless) indifference and the causal connection between his deficient hiring/retention, failure to train, supervise, or discipline, and his ratification of inadequate practices, Simpson—acting as a frontline officer—used unlawful force and injured Plaintiff Amy Torres on November 2, 2024, thereby causing her constitutional injuries.

69.     Corporal Jonathan Simpson had a well-documented history of misconduct prior to and during his employment with the Sylvania Police Department, which demonstrated a substantial risk of abuse of power, insubordination, and poor judgment. This history included:

70.     Termination from the Savannah State University Department of Public Safety on July 31, 2014, for insubordination and performance deficiencies, specifically refusing radio calls, lying about transmissions, and failing to correct reports.

71.     Flagged separation as a termination/dismissal from the Tybee Island Police Department.

72.     Notations of "11 red flags" in application materials for the Rincon Police Department and Centerville Police Department, including questions related to the purchase, supply, or sale of illegal drugs.

Termination from the Effingham County Sheriff's Office on June 17, 2020, for violations of policies on professional image, on- and off-duty conduct, and conduct unbecoming, following review of racially motivated Facebook posts.

12

73.    A public reprimand and 24-month probation with required remedial training from Georgia POST on April 23, 2021.

74.    Chief Burke, in his supervisory capacity, had actual or constructive knowledge of Corporal Simpson's extensive "red flag" prior employment and disciplinary record, including his temperament and propensity to escalate encounters when confronted with perceived non-compliance. Despite this knowledge, Chief Burke hired Simpson in February 2021 while Simpson was on POST probation and thereafter retained him.

75.    Acting with deliberate indifference to the known or obvious risk of constitutional violations posed by Simpson, Chief Burke, in his supervisory capacity, failed to implement or enforce reasonable policies, procedures, or training regarding adequate inquiry into prior misconduct, hiring standards, de-escalation tactics, proper use of force, and corrective discipline for officers like Simpson. This systemic failure created an environment where an officer with Simpson's history was empowered to interact with the public without adequate oversight or training, directly contributing to the foreseeable deprivation of citizens' rights.

76.    As a direct and proximate result of Chief Burke's deliberate indifference and the resulting municipal policy of inadequate hiring, retention, training, supervision, and discipline, Corporal Simpson, acting under color of law, unlawfully seized Plaintiff Amy Torres on November 2, 2023.

77.    Specifically, Simpson failed to provide a lawful notice of trespass, initiated physical force without reasonable suspicion or probable cause, aggressively commanded Plaintiff, pulled her arm at him to create a false pretext of assault for his body camera, threw her to the ground, and applied excessive force during handcuffing, causing severe and lasting injuries to her shoulders.

78.    He then maliciously prosecuted her with charges of obstruction and public disturbance, which were subsequently dismissed.

79.    The actions and inactions of Chief Burke, as the final policymaker, were the moving force behind the deprivations of Plaintiff Amy Torres's Fourth and Fourteenth Amendment rights to be free from unlawful seizure, false arrest, malicious prosecution, and excessive force.

80.    As a direct and proximate result of the City of Sylvania's municipal policy and custom, through Chief Burke, Plaintiff suffered severe physical pain and injury to both shoulders, requiring physical therapy and surgical intervention, lost wages, incurred substantial medical expenses, and experienced profound emotional distress and mental anguish.

81.    Plaintiff is entitled to compensatory damages, including pre- and post-judgment interest, and reasonable attorney's fees and costs from the City of Sylvania under 42 U.S.C. § 1988.

Damages

82.    As a direct and proximate result of Defendants' joint and several conduct, Plaintiff suffered and continues to suffer physical pain and injury to both shoulders; underwent surgeries and therapy; incurred and will incur medical expenses; lost wages, diminished earning capacity; and endured emotional distress and mental anguish.

83.    Plaintiff seeks damages available damages at law and equity, including pre- and post-judgment interest, including punitive damages against the individual-capacity defendants.

Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

      A. Compensatory damages in an amount to be determined at trial;

      B. Punitive damages against the individual-capacity Defendants to deter similar misconduct;

      C. Declaratory and appropriate injunctive relief as warranted;

      D. Reasonable attorney's fees and costs under 42 U.S.C. § 1988; and

      E. Such other and further relief as the Court deems just and proper.

JURY DEMAND: Plaintiff demands a trial by jury on all issues so triable.

      This 3rd day of November 2025.

                    Respectfully submitted,

                    /s/ John P. Batson
                    John P. Batson
                    Ga. Bar No. 042150
                    1104 Milledge Road
                    Augusta, GA  30904
                    Office 706-737-4040
                    jpbatson@aol.com

                    *Counsel for Plaintiff Amy Torres*

Prepared by:

John P. Batson
1104 Milledge Road
Augusta, GA  30904
Office 706-737-4040
jpbatson@aol.com